**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**STEVEN D. STOKES,**

      **Plaintiff,**

   **vs.**                                                **Civil Action 2:10-CV-660
                                                             Judge Frost
                                                             Magistrate Judge**


**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**


**REPORT AND RECOMMENDATION**

     This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383 for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income.  This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 13, and the Commissioner's *Memorandum in Opposition*, Doc. No. 14.

     Plaintiff Steven Stokes filed for benefits on January 23, 2006, alleging that he has been disabled since November 20, 2005.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

     On January 17, 2008, plaintiff, represented by counsel, appeared and testified at the administrative hearing, as did Tanya Rutherford Owen, who testified as a vocational expert.

     In a decision dated August 20, 2008, the administrative law judge

found that plaintiff's severe impairments consist of a back disorder, dysthymic disorder, polysubstance dependence and borderline personality traits.  *A.R.* 19-20.  The administrative law judge went on to find that plaintiff's mental impairments, after including the substance use disorder, met Listings 12.04 and 12.09.  *A.R.* 20-21.  In particular, the administrative law judge concluded that plaintiff had marked difficulties in the areas of social functioning and in concentration, persistence or pace.  *Id*.  However, the administrative law judge also found that, but for plaintiff's substance abuse, his impairments would neither meet nor equal a listed impairment.  *A.R.* 21-22.  Specifically, the administrative law judge found that plaintiff would, under those circumstances, have only moderate difficulties in social functioning and in concentration, persistence or pace.  *Id*.  Relying on the testimony of the vocational expert, the administrative law judge went on to find that, absent plaintiff's substance use, he would have a residual functional capacity to perform his past relevant work as a hand packager as he performed that job in 2004 and that "there would be a significant number of other jobs in the national economy that he could perform[,]" including jobs in housekeeping and meat processing.  *A.R.* 21-26.  The administrative law judge therefore concluded that plaintiff is not disabled within the meaning of the Social Security Act.  *A.R.* 26.  That decision became the final decision of the Commissioner when the Appeals Council declined review on May 21, 2010.  *A.R.*  2-5.

     Plaintiff was 54 years of age at the time the administrative law judge issued her decision.  *A.R.* 26, 605.  He has a high school education and prior relevant work experience as an instrumentation

technician, hand packager and plastic machine operator. *A.R.* 605, 607-614. He has not engaged in substantial gainful employment since November 2005. *A.R.* 59.

Randeep Mann, M.D., treated plaintiff in late 2004 and early 2005 for complaints of pain in his neck and back and depression. *A.R.* 108, 117-19. Dr. Mann continued to examine plaintiff every month through 2005. *A.R.* 111-19. Dr. Mann prescribed Vicodin, Mobic, Effexor and Zanax. *A.R.* 52.

On November 3, 2005, Dr. Mann reported that clinical examination revealed a reduced range of motion in the lumbar spine, sensory loss, tenderness, muscle spasm, weight change and impaired sleep. *A.R.* 151-52. Dr. Mann also reported that emotional factors contributed to plaintiff's symptoms and functional limitations. Plaintiff's medications caused dizziness, drowsiness and memory lapses. *A.R.* 152. According to Dr. Mann, plaintiff's pain and other symptoms were severe enough to constantly interfere with the attention and concentration needed to perform even simple work tasks. *Id*. Dr. Mann estimated that plaintiff could stand/walk for less than two hours in an 8-hour working day, could sit for about four hours and could occasionally lift ten pounds. *A.R.* 153-54. Plaintiff could occasionally crouch/squat, could rarely twist, bend/stoop and climb stairs and could never climb ladders. *A.R.* 154. Dr. Mann also diagnosed depression. *A.R.* 151. As a result of these impairments or the treatment of these impairments, Dr. Mann believed that plaintiff would be absent from work for more than four days per month. *A.R.* 154.

A November 2005 MRI of plaintiff's lumbar spine revealed a mild left convex lumbar curvature with vertebral body heights, but normal

3

disc interspace widths and no spinal stenosis or disc herniation. *A.R.* 110. A December 2005 MRI of plaintiff's thoracic spine appeared normal except for a hemangioma or fatty marrow in the fifth dorsal vertebra. *A.R.* 109.

On March 10, 2006, Don Ott, Psy.D., performed a consultative mental status examination at the request of the state agency. *A.R.* 99-107. Dr. Ott noted that plaintiff, who had a friend drive him to the evaluation, has no history of hospitalizations for mental or emotional distress, but had undergone outpatient counseling in the past and had taken antidepressant medication for about two years. *A.R.* 99-100. Plaintiff had been married and divorced twice and had a teenage son. *A.R.* 100. Plaintiff lived alone at the time and took care of his own cooking, laundry and housework. *A.R.* 105. His driver's license had been suspended and he relied on a friend to take him grocery shopping. *Id*. He was generally able to manage personal hygiene without assistance, although his back problems required assistance with personal care on some occasions. *Id*. He had no history of street drug abuse or dependence, but admitted to a history of alcohol abuse dating to the early nineties. It was because of his alcohol abuse that plaintiff lost his job and driver's license. *A.R.* 101. Although plaintiff seemed tense and defensive during the examination, he was cooperative and did not appear aggressive or hostile. *Id*. Plaintiff described his mood as depressed and angry, but denied suicidal attempts or intent. *A.R.* 102. According to plaintiff, he had never had problems getting along with people at work, although he avoids social interaction because he does not especially like people. *A.R.* 104. Dr. Ott observed no specific limitations in the areas of

concentration, persistence, or pace. *A.R.* 106. Dr. Ott diagnosed dysthymic disorder and nicotine dependence and opined that plaintiff's depression would improve with therapy. *A.R.* 103.

On March 10, 2006, plaintiff reported that he prepared his own meals, shopped for groceries on a weekly basis and did his laundry on a limited basis. *A.R.* 66-69. He reported that he spent time with other people when he needed rides or help getting things done. *A.R.* 70. However, plaintiff also reported that he had problems getting along with family, friends, neighbors and others. *A.R.* 71. He complained that he was very isolated and had few personal contacts. *Id*.

On April 7, 2006, Dr. Mann reported that nonsteroidals and opioids have significantly improved plaintiff's quality of life and have kept him functional. *A.R.* 108. Effexor has helped with plaintiff's social anxiety and depression. *Id*. In November 2006, Dr. Mann diagnosed C-spondylosis, L-spondylosis, arthritis, headaches secondary to stress, and frequent bouts of depression and insomnia. *A.R.* 150.

On July 3, 2007, Dr. Mann opined that he expected plaintiff's condition to deteriorate over time. *A.R.* 150. Dr. Mann further opined that plaintiff was unable to gain, engage in, or sustain any form of gainful employment. *Id*.

Plaintiff sought treatment in a Veterans Administration ("VA") alcohol treatment program in September 2007. *A.R.* 175. He reported a long-term history of alcohol dependence with present consumption of 1.5 liters daily when he had the funds. *Id*. VA addiction therapist Alicia Weekes-Johnson noted that Plaintiff acknowledged that he was

currently taking Oxycodone and had last used cannabis 4 days prior. *A.R.* 176.  However, plaintiff denied drug problems.  *Id.*

Plaintiff was admitted to a VA alcohol and substance abuse treatment program in Dayton, Ohio on November 1, 2007.  *A.R.* 211, 624. Admission notes indicate "NONE LISTED" in connection with reported mental health issues. *A.R.* 212 (emphasis in original).  According to plaintiff, before admission he had "been drinking since age 20 binges 3-4 days a week.  Drinks vodka an dbourbon [sic] 1/5 th daily.  Vet uses Marijuana and prescription meds.  He is a 45 yr pack smoker." *A.R.* 224.  He denied suicidal or homicidal ideation and denied hallucinations.  *Id*.

During the course of this treatment program, plaintiff regularly participated in the program's activities.  *A.R.* 174, 179-80, 188-97, 200-10, 214-15, 217-21, 223.  For example, he participated in group therapy, a spirituality group, Kinesiotherapy, job readiness class, recreation activities (*i.e.*, "Wacky Bowling" Tournament, trivia games, an off-site Thanksgiving dinner and bingo), a transition class, family therapy, a goals group, a didactic group and a  life skills / values group.  *Id*.  On several of these occasions, plaintiff's appropriate participation was noted.  *A.R.* 192 ("Veteran participated appropriately"), 193 ("No problems noted"), 197 ("Mr. Stokes was an active participant who contributed positively"), 200 ("This veteran listened attentively and participated appropriately"), 201 ("Mr. Stokes participated actively and appropriately in the group discussion" and "Continues to be engaged in treatment"), 203 ("Mr. Stokes was attentive and made relevant comments during the group session"), 205 ("Mr. Stokes was an active participant. . . . He

contributed positively to both the content and the process of the group"), 210 ("Mr. Stokes was attentive and made relevant comments"), 214 ("Veteran participated with appropriate responses and demonstration of feelings") and 217 ("Vet displayed appropriate behavior and social interaction skills with other vets and staff while on [off-site] trip"  and "The Veteran attended and actively participated in a Spirituality Group").

On November 29, 2007, VA psychologist Peter Herr reported that plaintiff's Personality Assessment Inventory ("PAI") "was not interpretable because of excessive claiming of symptoms.  He [plaintiff] does not appear to be malingering, but does appear to be exaggerating the extent of his illness."  *A.R.* 181.  Plaintiff also admitted that, upon entry into the program, he had not surrendered the medication that he had with him.  *A.R.* 182.  The psychologist found "no evidence of a thought disorder.  He remains somewhat depressed and mildly anxious.  He appears to be at low risk for [suicide/homicide] at this time. . . . He is more likely to return to self-medication than to harming himself."  *A.R.* 183.  The psychologist diagnosed polysubstance dependence and dysthymic disorder r/o major depression, sexual disorder,  *A.R.* 182, and borderline personality traits r/o disorder,  *A.R.* 183.

On December 2, 2007, plaintiff attended the program's Christmas party.  *A.R.* 179.  It was reported that plaintiff "was seen laughing and talking to the staff and or volunteers.  Resident [plaintiff] was also seen interacting with other residents at the table."  *Id*.  It was also reported that, at the party, plaintiff "was one of twenty participating in several Christmas Game Activities. . . . No problems

were noted." *A.R.* 179-80.

Plaintiff successfully completed the residential treatment program, *A.R.* 180, and was referred to and accepted into a program with the Volunteers of America in Columbus, Ohio, "where he can continue to receive more treatment and eventually consider a halfway placement." *Id.*

Plaintiff was still enrolled in that program at the time of the administrative hearing.  Plaintiff testified that, before treatment, he drank "[a] few days a week" and that "[w]hen I drank, I drank a lot."  *A.R.* 620.  However, plaintiff testified, "[m]y drinking didn't really have any affect [sic] on" his stopping work in November 2005. *A.R.* 619.  Plaintiff denied that his depression had improved since he had quit drinking. *A.R.* 620. He remains under the care of a VA doctor who prescribes medication and counseling for back pain and depression. *A.R.* 617, 621.  Because of his depression, he is sometimes unable to make even simple decisions; he does not derive enjoyment out of anything; he does not care about a lot of things; he feels angry, irritable and sometimes suicidal and paranoid; "[j]ust all around bad."  *A.R.* 621.  Plaintiff is "not able to do a lot for myself right now[,]" including household chores.  *A.R.* 618-18, 621.

Plaintiff also testified about his prior jobs. His work as an instrumentation technician in a water plant required supervision of others and work with a team.  *A.R.* 607, 609-10. His job as a hand packager required that he lift and carry "[p]robably 15, 10 or 15 pounds."  *A.R.* 612.  His work as a machine operator required that he lift and carry "about the same amount."  *A.R.* 612-13.

Vocational expert Tanya Owen was asked to assume a claimant with

plaintiff's vocational profile and the residual functional capacity to occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel and balance, but never climb scaffolds, ladders or ropes.  *A.R.* 628-29.  According to the vocational expert, such a claimant could perform plaintiff's past work as a plastics machine operator and instrumentation technician. *A.R.* 629.

Asked to assume, in addition, pain and side effects of medication that would limit the claimant to "unskilled, noncomplex, simple instructions, little judgment, routine repetitive type work, which can be learned by rote with few variables and no more than superficial contact incidental to work with the public and with co-workers and supervision which is direct concrete and specific," *A.R.* 629, the vocational expert testified that such a claimant could perform plaintiff's past relevant work as a hand packager, as plaintiff actually performed that job.  A.R. 630-31.  Such a claimant could also perform jobs in housekeeping and meat processing.  *A.R.* 629-30.

It was based on this testimony that the administrative law judge concluded that, absent substance abuse, plaintiff could perform either his prior job as a hand packager or jobs that exist in significant numbers in the national economy.  The administrative law judge therefore concluded that plaintiff is not disabled within the meaning of the Social Security Act.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and  employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595

(6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff first argues that the administrative law judge erred in finding that substance use was a material factor in plaintiff's disability. Plaintiff complains that the administrative law judge improperly based this finding "almost exclusively" on plaintiff's functioning during the VA residential treatment program, *i.e.*, a limited time period in a structured setting. *Statement of Errors*, pp. 5-8 (citing, *inter alia*, Section 12.00(F) of 20 C.F.R. Part 404 Appendix 1).[1] This Court disagrees.

---

[1] Section 12.00(F) provides:

Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar

10

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). "The key factor [the Commissioner] will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the Commissioner] would still find [the plaintiff] disabled if [the plaintiff] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). The administrative law judge must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 CFR §§ 404.1535(b)(2); 416.935(b)(2).

There is substantial support in the record for the finding of the administrative law judge in this regard. In concluding that plaintiff would have only moderate difficulties in social functioning and in concentration, persistence or pace if he ceased his substance abuse, the administrative law judge detailed the many social activities in which plaintiff participated while he was sober and enrolled in the VA program as well as his appropriate behavior during those activities.

---

structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized. At the same time, however, your ability to function outside of such a structured or supportive setting may not have changed. If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside of such highly structured settings.

*A.R.* 21-22.  The administrative law judge also referred to the observation of the VA psychologist that plaintiff displayed no evidence of a thought disorder and noted VA records indicating that plaintiff enjoyed reading and using the computer.  *A.R.* 22.  The administrative law judge also noted that the VA psychologist believed that plaintiff was exaggerating his symptoms.  *A.R.* 25.

Plaintiff insists that this evidence from the structured VA environment is too limited to qualify as substantial evidence.  Even if the Court were to agree with plaintiff's contention in this regard, which it does not, the Court notes that the administrative law judge also considered the record apart from the VA records.  For example, the administrative law judge noted that "there is no evidence that the claimant has ever been hospitalized for a mental disorder except as it relates to polysubstance dependence,"  *A.R.* 25, and, although Dr. Mann prescribed psychotropic medication, plaintiff apparently never underwent professional mental health treatment or even saw a mental health professional.  *Id*.  Plaintiff also maintains regular contact with his mother, with the help of a friend, another fact considered by the administrative law judge.  *A.R.* 22. In short, the Court concludes that the finding that substance use was a material factor in plaintiff's disability enjoys substantial support in the record.

Plaintiff also argues that the administrative law judge improperly relied on the testimony of the vocational expert based on a flawed hypothetical that failed to capture all of plaintiff's relevant impairments.  In advancing this argument, plaintiff first contends that the administrative law judge failed to resolve a conflict in the record about the exertional requirements of the hand packaging job as

12

plaintiff performed it.  Specifically, plaintiff notes evidence in the record reflecting that he previously described lifting 25 to 100 pounds as a hand packager, but that plaintiff testified at the administrative hearing that he lifted and carried 10 or 15 pounds in performing this job.  This apparent conflict, plaintiff argues, was not addressed by the administrative law judge and undermines the administrative law judge's finding that plaintiff had the residual functional capacity to return to his hand packaging job as he performed it.

This Court disagrees.  Although plaintiff indicated in a form that he frequently lifted 25 pounds as a hand packager and sometimes lifted 100 pounds in that job, *see* A.R. 76, the administrative law judge specifically questioned plaintiff at the administrative hearing about his work as a hand packager and how he performed it.  *A.R.* 612.  In response to that questioning, plaintiff testified that he lifted 10 to 15 pounds as a hand packager.  *A.R.* 612.  The administrative law judge specifically accepted this lighter lifting capacity and concluded that, based on the vocational expert's testimony, plaintiff had the residual functional capacity to perform his past relevant work as a hand packager as he actually performed it, *i.e.*, at the light exertional level.  *A.R.* 25-26.  The Court therefore concludes that the administrative law judge, in questioning plaintiff during the administrative hearing, properly clarified the evidence and made the particular fact finding appropriately reserved to the administrative law judge.  The administrative law judge did not err in this regard.

Plaintiff next argues that the hypothetical posed by the administrative law judge failed to fully capture all of plaintiff's

13

medical limitations and vocational factors, specifically, limitations in the areas of concentration, persistence or pace. *Statement of Errors*, pp. 11-12. In making this argument, plaintiff cites, *inter alia*, *Edwards v. Barnhart*, 383 F. Supp.2d 920, 930 (E.D. Mich. 2005), in which the court concluded that a hypothetical that referred only to "simple, routine, unskilled work" did not sufficiently capture a moderate limitation in concentration, persistence or pace. However, unlike the hypothetical in *Edwards*, the hypothetical posed by the administrative law judge in the instant case referred to additional limitations: "unskilled, noncomplex, simple instructions, little judgment, routine repetitive type work, which can be learned by rote with few variables and no more than superficial contact incidental to work with the public and with co-workers and supervision which is direct concrete and specific." A.R. 629. *Cf. Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010) (finding "streamlined hypothetical" limited "to simple, repetitive tasks and instructions in non-public settings" inadequate because it did not include speed and paced-based restrictions when there was evidence in the record that the plaintiff could only work in two-hour segments). Considering the record as a whole, the Court finds that the hypothetical in this case properly took into account plaintiff's moderate limitations in concentration, persistence or pace and that the decision of the administrative law judge is supported by substantial evidence in this regard.

    Having considered the entire record and the arguments of the parties, the Court concludes that the decision of the Commissioner enjoys substantial support in the record and applied all appropriate laws and regulations. Under these circumstances, the decision of the

Commissioner must be affirmed.

It is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.* *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


<u>August 19, 2011</u>                             *s/Norah McCann King*
     Date                                        Norah M<sup>c</sup>Cann King
                                        United States Magistrate Judge

15

Case: 2:10-cv-00660-GLF-NMK Doc #: 15 Filed: 08/19/11 Page: 16 of 16  PAGEID #: 76